IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **TARELL MALIK MCCANTS** | : | **No. 22-310** |

<u>MEMORANDUM</u>

PRATTER, J.                                                                 DECEMBER ____, 2023

      Defendant Tarell Malik McCants was charged with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Mr. McCants filed a motion to dismiss that charge in light of the decision of the Third Circuit Court of Appeals in *Range v. Attorney General* that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to Mr. Range. 69 F.4th 96 (3d Cir. 2023) (en banc). Although "the Government did not carry its burden of showing that our Nation's history and tradition of firearm regulation support[ed] disarming Range," *id.* at 98, here the Government brings forward a historical record replete with firearm regulations applying to those who pose a danger to others. Thus, because the Government carries its burden under *Range* and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. ----, 142 S. Ct. 2111 (2022), the Court denies Mr. McCant's Motion.

BACKGROUND

**A. Prior Criminal Convictions**

      Prior to the instant offense, Mr. McCants was convicted of three felonies—two punishable by up to seven years' imprisonment and the third punishable by up to ten years' imprisonment. The first two convictions stem from an incident in 2013 where Mr. McCants started a fight with three juveniles, and when they tried to walk away, Mr. McCants took out a gun from his schoolbag

1

and shot at them, almost striking one of the three. Mr. McCants pled guilty to aggravated assault and carrying a firearm without a license, in violation of 18 Pa. Cons. Stat. §§ 2702 and 6106. While Mr. McCants was still on parole for the 2013 shooting, he was arrested and found to be in possession of another firearm. In early 2014, Mr. McCants pled guilty to carrying a firearm without a license in violation of 18 Pa. Cons. Stat. § 1606.

### B. The Instant Offense

On October 17, 2021, Mr. McCants was in a corner store with some friends. Around 9:30 p.m., two people left the store and within seconds of them leaving, an unknown motorist pulled up and shot the two people in the legs. Mr. McCants ran out of the store and shot at least nine times at the vehicle as it fled the area. Mr. McCants then reentered the store and placed his gun on the counter. Police arrived shortly thereafter and reviewed video surveillance showing Mr. McCants firing his gun and reentering the store. Detectives found the firearm on the counter and seized it as evidence. Later testing revealed that nine of the shell casings recovered from the crime scene matched this firearm, which also had an obliterated serial number. A state arrest warrant was issued for Mr. McCants, but he was not taken into custody for almost six months. When Mr. McCants was arrested, he was carrying a firearm—a loaded 9mm Taurus 709 pistol—which firearm forensic testing later concluded was used in 2019 and 2020 aggravated assaults.

On September 13, 2022, Mr. McCants was charged in an indictment with two counts of possession of a firearm by a person previously convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1). The indictment specifies that Mr. McCants allegedly possessed "a Sig Sauer, Model P365, 9mm Luger semi-automatic pistol" and "a Taurus, Model 709, 9mm Luger semi-automatic pistol ... loaded with eight live rounds of 9mm Luger ammunition." Doc. No. 31, at 4.

On October 12, 2023, Mr. McCants filed a Motion to Dismiss this indictment. Doc. No. 30. The Court denies the Motion.

## DISCUSSION

Mr. McCants argues that Section 922(g)(1) is unconstitutional both on its face and as applied to him following *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 142 S. Ct. 2111 (2022) and *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (en banc). Mr. McCants asserts that Section 922(g)(1) is unconstitutional as applied to him because the Government cannot identify a longstanding historical tradition of disarming people like Mr. McCants, as is required by *Range* and *Bruen*.

In *Range*, Mr. Range filed a civil suit in which he averred that Section 922(g)(1) violated the Second Amendment *as applied to him*. 69 F.4th at 99 (emphasis added). Mr. Range tried to purchase a firearm in 1998, but the Pennsylvania instant background check system rejected that purchase after it was discovered that Mr. Range was previously convicted of a Pennsylvania misdemeanor punishable by up to five years' imprisonment. *Id.* at 98–99. Mr. Range's crime dated back to 1995 when he pled guilty to making a false statement to obtain food stamps because he and his wife struggled to raise their three children, earning only $300 a week. *Id.* at 98. At the time of filing his complaint, Mr. Range's single conviction from over 25 years earlier still precluded him from purchasing a firearm. *See id.*

The Third Circuit Court of Appeals first held that Mr. Range was among "the people" protected by the Second Amendment, even though he had a false statement misdemeanor conviction from 1995. *Id.* at 103. In its reasoning, the Third Circuit Court of Appeals rejected the Government's contention that the Second Amendment applied only to "law-abiding, responsible citizens[,]" in part because that description "is as expansive as it is vague." *Id.* at 102. Instead, "the

3

people" "unambiguously refers to all members of the political community, not an unspecified subset." *Id.* at 101 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)).

The Third Circuit Court of Appeals recognized, however, that it was "hardly illogical" "[t]hat individuals with Second Amendment rights may nonetheless be denied possession of a firearm." *Id.* at 102 (quoting *Binderup v. Att'y Gen.*, 836 F.3d 336, 344 (3d Cir. 2016)). The court also agreed with then-Judge Barrett's reasoning that "'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting).

The Third Circuit Court of Appeals also held that the Government did not fulfill its obligations under *Bruen*. *Id.* at 103 (quoting *Bruen*, 142 S. Ct. at 2130). After analyzing the Government's arguments in *Range*, the Third Circuit Court of Appeals ultimately held that the Government did not carry its burden "show[ing] that the Nation's historical tradition of firearms regulation support[ed] depriving Range of his Second Amendment right to possess a firearm." *Id.* at 106.

Here, the Government concedes that Mr. McCants "is one of 'the people' protected by the Second Amendment." Doc. No. 31, at 8. The next question is whether Section 922 (g)(1) regulates Second Amendment conduct. *Range*, 69 F.4th at 103. In two simple words: "It does." *Id.* The key inquiry, therefore, is whether the Government has carried its burden demonstrating that Mr. McCants can be deprived of his Second Amendment right consistent with the Nation's historical tradition of firearms regulation. The Government has met that burden here.

As an initial matter, the court of appeals' holding in *Range* was a "narrow one," applying only in the exceptional circumstances of Mr. Range, who sought to vindicate his right to possess a firearm for lawful self-defense and recreational purposes notwithstanding his single, decades-

4

old conviction for making a false statement to obtain food stamps. *Range*, 69 F.4th at 106. Mr. McCants, on the other hand, has multiple previous convictions involving violent conduct and unlawful possession of firearms—he is not at all like Mr. Range.

A restriction on firearm possession by someone like Mr. McCants "comport[s] with history and tradition." *Bruen*, 142 S. Ct. at 2128. The Government has identified the requisite historical "analogue" for the challenged restriction, "demonstrating that [the restriction] is consistent with the Nation's historical tradition of firearm regulation." *See id.* at 2130. Specifically, the Government has established clear historical support for restricting the possession of firearms by persons who, like Mr. McCants, previously committed dangerous felonies (especially dangerous felonies involving unlawful use of firearms). Doc. No. 31, at 13-17. The Government begins its survey of analogous, historical restrictions by referencing the English[1] Militia Act of 1662, which empowered the government to "seize all arms in the custody or possession of any person" who was "judge[d] to be dangerous to the Peace of the Kingdom." Militia Act 1662, 13 & 14 Car. 2, c. 3, § 13. And this restriction survived even the passage of the 1689 English Bill of Rights, which expressly guaranteed the right to keep and bear arms. *See* Diarmuid F. O'Scannlain, "Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms," 95 Notre Dame L. Rev. 397, 405 (2019). In other words, the restriction outlined in the Militia Act was consistent with the rights codified in the Bill of Rights.

Likewise, colonial and early state legislatures disarmed individuals who "posed a potential danger" to others. *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 200 (5th Cir. 2012), *abrogated on unrelated grounds by Bruen*, 142 S. Ct. 2111 (citing Adam Winkler, *Gunfight: The Battle over the Right to Bear Arms in America* 113-

---

[1] These English regulations are relevant to this historical inquiry because the Second Amendment "codified a right 'inherited from our English ancestors.'" *Heller*, 554 U.S. at 599.

18 (2011)). In fact, several jurisdictions passed laws categorically disarming certain groups for public safety reasons, including those who refused to swear allegiance to the state or to the nation. *See e.g.,* Act of May 1, 1776, ch. 21, § 1, 1776 Mass. Acts. 479; Act of June 13, 1777, ch. 21, § 4, 1777 Pa. Laws 63; Act of May 28, 1777, ch. 3 (Va.)., reprinted in 9 William Waller Hening, The Statutes at Large; Being a Collection of all the Laws of Virginia from the First Session of the Legislature, in the Year 1619, at 281-83 (1821). And some states disarmed individuals who had engaged in particular types of dangerous conduct, such as bearing arms in a manner that terrorizes the public. *See e.g.,* Act for the Punishing of Criminal Offenders, 1692 Mass. Laws 11-12; Act for the Punishing of Criminal Offenders, 1696-1701 N.H. Laws 15.

In her dissent in *Range*, Judge Krause provided a thorough examination of similar legislation and statutes that existed from the time of the English Restoration to the ratification of the U.S. Constitution. For example, she discussed the colonies placing restrictions on those who "could not be trusted to obey the law[,]" even on those considered part of the limited body politic at the time. *Range*, 69 F.4th at 122 (Krause, J., dissenting). Revolutionary Virginia disarmed those who would not "abide by the newly sovereign state's legal norms[,]" and the government disarmed those who could not be trusted to abide by the law even here in Pennsylvania. *Id.* at 125 (Krause, J., dissenting). These serve as examples, "consistent with this Nation's historical tradition of firearm regulation[,]" of the disarmament of those with prior convictions who posed a potential danger to society. *See Bruen,* 142 S. Ct. at 2126.

And Mr. Range himself had argued that "dangerousness" is the "touchstone" to disarming felons. *See Range,* 69 F. 4th at 104 n.9. Though the majority did "not decide this dispute[,]" *id.*, it did hold that "[f]ounding-era laws often prescribed the *forfeiture of the weapon used to commit a firearms-related weapon* without affecting the perpetrator's right to keep and bear arms generally."

*Id.* at 105 (emphasis added). And other judges and justices within the *Range* and *Bruen* majorities have found similarly. *See, e.g., Folajtar v. Att'y Gen.*, 980 F.3d 897, 913 (3d Cir. 2020) (Bibas, J., dissenting) ("In England and colonial America, the Government disarmed people who posed a danger to others."); *Kanter*, 919 F.3d at 454 (Barrett, J., dissenting) ("The historical evidence does, however, support a different proposition: that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten public safety.").

Here, Mr. McCants' prior criminal convictions place him within the category of those who have been disarmed consistent with the Nation's historical tradition. Mr. McCants was convicted of aggravated assault and carrying a firearm without a license after he opened fire on three juveniles who were attempting to walk away from him. Aggravated assault, like murder and robbery, is a paradigmatic violent crime, and those who commit such a crime are dangerous to the public peace and would have been disarmed at the time of the Founding. *See e.g.,* Act for the Punishing of Criminal Offenders, 1692 Mass. Laws 11-12 (empowering justices of the peace to "take away ... armour or weapons" of "affrayers, rioters, disturbers or breakers of the peace ..."); Act for the Punishing of Criminal Offenders, 1696-1701 N.H. Laws 15. Moreover, while he was still on parole for those offenses, Mr. McCants was again convicted of carrying a firearm without a license. Barring Mr. McCants from possessing firearms is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

Mr. McCants also argues that Section 922(g)(1) is facially unconstitutional. "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (en banc) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). Mr.

7

McCants has not made such a showing. In *Heller*, the Supreme Court held that "the longstanding prohibitions on the possession of firearms by felons" is "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26. In other words, the *Heller* Court "recognized that history supported the constitutionality of some laws limiting the right to possess a firearm, such as laws . . . prohibiting possession by felons and other dangerous individuals." *NYSRPA v. City of New York*, 140 S. Ct. 1525, 1540-41 (2020) (Alito, J., dissenting). And "the Court in *Heller* affirmatively *approved* a slew of gun laws[,]" including "felon-in-possession laws, and the like[.]" *Heller v. District of Columbia*, 670 F.3d 1244, 1278 (D.C. Cir. 2011) (Kavanaugh, J., dissenting). Moreover, as discussed above, Mr. McCants did not meet his burden of showing that Section 922(g)(1) violates the Second Amendment even as applied to him.

As a colleague in this district recently observed, "nearly every opinion in [the Third Circuit] addressing this issue after *Range* has held that § 922(g)(1) is constitutional both on its face and as applied." *United States v. Hedgepeth*, 22-cr-377, 2023 WL 7167138, at *8 & n.5 (E.D. Pa. Oct. 31, 2023). In sum, the Government has met its burden demonstrating that the historical traditions of this Nation render Section 922(g)(1) constitutional on its face and as applied to Mr. McCants.

And Mr. McCants' argument that Section 922(g)(1) is void for vagueness because it "fails to give ordinary people fair warning of what conduct is subject to punishment" is also unavailing. As an initial matter, the Supreme Court has repeatedly held that, outside the context of laws restricting speech, a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (internal citation omitted); *see, e.g., Chapman v. United States*, 500 U.S. 453, 467 (1991). As explained above, Mr. McCants' conduct underlying the instant indictment is plainly and properly proscribed by Section 922(g)(1).

Moreover, a criminal statute like Section 922(g)(1) is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Section 922(g)(1) is explicit and easily understandable: it prohibits any person who has previously been convicted of a crime punishable by more than a year in prison from possessing a firearm. Section 922(g)(1) is not rendered void for vagueness merely because there are certain circumstances in which its application might offend the Second Amendment. *Cf. Williams*, 553 U.S. at 306; *Skilling v. United States*, 561 U.S. 358, 403 (2010).

Finally, Mr. McCants' assertion that Section 922(g)(1) violates the Commerce Clause also fails because his argument is foreclosed by settled law. *United States v. Singletary*, 268 F.3d 196, 197 (3d Cir. 2001).

## CONCLUSION

For the foregoing reasons, Mr. McCant's Motion to Dismiss (Doc. No. 30) is denied. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE